# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| vs. | § | Criminal No. 4:24-cr-00385 |
| | § | |
| SANJAY KUMAR | § | |
| | § | |
| Defendant. | § | |

## PLEA AGREEMENT

1. The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, Jay Hileman, Assistant United States Attorney, Ethan Cantor, Trial Attorney, Criminal Division, Computer Crime and Intellectual Property Section, the Defendant, Sanjay Kumar, and Defendant's counsel, Kent Schaffer and James Kennedy, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows.

### Defendant's Agreement

2. Defendant agrees to plead guilty to Count One of the Indictment. Count One charges Defendant with Conspiracy, in violation of Title 18, United States Code, Section 2320(a)(4). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, proved to a jury, or proven beyond a reasonable doubt.

### Punishment Range and Guidelines Calculations

3. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2320(a), is imprisonment of not more than 20 years and a fine of not more than $5,000,000.

Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to 2 years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Guidelines Calculations

4. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

   a. <u>Base Offense Level</u>. The parties agree that the base offense level is **8** pursuant to U.S.S.G. § 2B5.3(a).

   b. <u>Specific Offense Characteristics</u>.

      i) <u>Infringement Amount</u>. The parties agree that the infringement amount was at least $95,000 but that the Government will not argue that the infringement amount was more than $150,000. The parties agree to the

following Wholesale Acquisition Costs (WAC) for the purposes of calculating infringement amount: $2,200 WAC for sales of 50 mg vials in 2019 and 2020; $4,862.04 for sales of 100 mg vials in 2020; $5,134.36 for sales of 100 mg vials in 2021; $5,341.76 for sales of 100 mg vials in 2022; $5,448.56 for sales of 100 mg vials in 2023.

The parties agree that the offense level should be **increased by 8 levels.** U.S.S.G. §§ 2B5.3(b)(1)(B) and 2B1.1(b)(1)(E).

ii) <u>Importation</u>. The parties agree that the offense level should be **increased by 2 levels,** as the offense involved the importation of infringing items. U.S.S.G. § 2B5.3(b)(3)(A).

iii) <u>Drug</u>. The parties agree that the offense level should be **increased by 2 levels,** as the offense involved a drug that used a counterfeit mark on or in connection with the drug. U.S.S.G. § 2B5.3(b)(5).

iv) <u>Risk of Death or Serious Bodily Injury</u>. The parties agree that the offense level should be **increased by 2 levels,** as the offense involved the conscious or reckless risk of death or serious bodily injury. U.S.S.G. § 2B5.3(b)(6)(A).

3

c. Chapter 3 Adjustments.

    i) Role in the Offense. The parties agree that the offense level should be **increased by 2 levels** as the defendant was an organizer, leader, manager, or supervisor in criminal activity. U.S.S.G. § 3B1.1(c).

    ii) Acceptance of Responsibility. If Defendant pleads guilty to Count One of the indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, at the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a **2 level reduction** pursuant to section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines. If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States agrees not to oppose the Defendant's request under section 3E1.1(b) for an additional **1 level reduction** because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

Other than acceptance of responsibility, no other Chapter 3 adjustments may apply. Nothing in this agreement limits the right of the Government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

d. <u>Criminal History Category</u>. The parties believe that, at the time of sentencing, the defendant will fall into **Criminal History Category I.** U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1. While sentences resulting from foreign convictions are not counted, they may be considered under § 4A1.3 (Adequacy of Criminal History Category).

e. <u>Guidelines Range</u>. If the adjusted offense level is **21**, and the criminal history category is **I**, the Sentencing Guidelines range is **37 to 46 months of imprisonment.** The Government would agree under that range to cap its recommendation for imprisonment at 43 months.

**Mandatory Special Assessment**

5.  Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

6.  Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

**Waiver of Appeal and Collateral Review**

7.  Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and

sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statute(s) to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute(s). In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005).

Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

9. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

### Agreement Binding - Southern District of Texas and the Computer Crime and Intellectual Property Section Only

10. The United States Attorney's Office for the Southern District of Texas and the Computer Crime and Intellectual Property Section of the United States Department of Justice agree that they will not further criminally prosecute Defendant for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Computer Crime and Intellectual Property Section of the Criminal Division of the United States Department of Justice, and Defendant. It does not bind any other United States Attorney's Office or division of the United States Department of Justice. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea

agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of the charges contained in Count One of the indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others, establish Defendant's guilt:

Defendant SANJAY KUMAR was an Indian national who knowingly sold pharmaceutical products bearing counterfeit marks from Chandigarh, India into the U.S. Among

the drugs illegally sold by KUMAR was Keytruda, a prescription drug used to treat cancer (in the instances described below, and as explained further below, the Keytruda did not contain the active ingredient for Keytruda). Merck Sharp & Dohme LLC formerly known as Merck Sharp & Dohme Corp. ("Merck") had the exclusive right to authorize the manufacture of Keytruda for distribution within the U.S. and owned the trademarks for the designs and word marks used by Merck to identify Keytruda and other Merck products. At the time KUMAR engaged in the sale and distribution of Keytruda using counterfeit marks, he knew that he did not have trademark ownership or manufacturing rights for these drugs.

Beginning in or around August 2018 until approximately on or about June 26, 2024, KUMAR, with the aid of co-conspirators, intentionally conspired to, and did traffic Keytruda bearing counterfeit marks into the U.S. During the course of their criminal conspiracy, KUMAR and his co-conspirators negotiated numerous sales of pharmaceuticals with counterfeit marks to both agents of a private company working with law enforcement and agents from U.S. Homeland Security Investigations (HSI), acting in an undercover capacity. Over years, these agents texted with members of the conspiracy, including KUMAR, concerning the placement of orders, payments, and shipments of pharmaceuticals to the U.S. In addition to other sales of Keytruda bearing counterfeit marks during this period, KUMAR, with the assistance of his co-conspirators, sold the following quantities of Keytruda using counterfeit marks to agents:

| Date (on or about) | Sale Price | Description of Purported Product Sold |
|---|---|---|
| January 30, 2020 | $2,500 | 1 x 50mg vial of Keytruda |

| | | |
|---|---|---|
| March 28, 2023 | $3,500 | 2 x 100mg of Keytruda |
| May 8, 2023 | $5,998 | 2 x 100mg Keytruda |
| June 20, 2023 | $3,500 | 2 x 100mg of Keytruda |

At the direction of KUMAR, the aforementioned drugs were shipped by co-conspirators to Houston, Texas. The undercover agents wired each payment to Indian-based bank accounts as directed by KUMAR and his co-conspirators.

Laboratory testing concluded that KUMAR sold Keytruda bearing counterfeit marks into the U.S., and that these drugs violated the trademarks registered to Merck in the principal registry in the United States Patent and Trademark Office. The Keytruda marks were counterfeit in that neither KUMAR nor any of his co-conspirators had any authorization or license from the brand-holder to manufacture, make, sell, or traffic in genuine Keytruda. Furthermore, the Keytruda bearing the counterfeit marks was chemically inconsistent with genuine Keytruda and did not contain the active ingredient necessary for the drug to serve its medical purpose. Instead, the Keytruda bearing the counterfeit marks sold by KUMAR and his co-conspirators included fillers and adulterants that served no legitimate function for treating cancer. The packaging of the pharmaceuticals was also counterfeit in that the pharmaceuticals purported to be Merck brand Keytruda packaged in containers that bore trademarks that were substantially indistinguishable from the genuine marks registered to Merck and used to identify genuine Keytruda. Furthermore,

the packages bearing counterfeit marks often contained false lot numbers, invalid expiry dates, and misspellings.

Over the course of the conspiracy, KUMAR and his co-conspirators received approximately $89,268 for their sales of Keytruda using counterfeit marks to undercover agents, with a total WAC value of approximately $127,465.72.

On June 26, 2024, KUMAR met with undercover agents in a hotel in Houston, Texas. KUMAR believed that these agents were future business partners and purchasers. During part of the meeting, KUMAR also dialed in a co-conspirator, whom he explained could provide the agents with detailed information on the pharmaceuticals KUMAR was able to source.

During this meeting, KUMAR expressed his intention to form a long-term business partnership with the undercover agents, assuring the agents that they would all profit. KUMAR explained that he had been in this business for more than ten years, and that, at a global level, his pharmaceutical company, MediPharma, was shipping more than a hundred pharmaceutical parcels per day. KUMAR explained that his previous company, Reliable Chemist, was shut down after his employees and business partners were arrested by Indian authorities after selling "fake" Keytruda. KUMAR also made it clear that he understood the risks posed by counterfeit pharmaceuticals and raised these with agents, explaining that counterfeit Keytruda would not work to treat cancer and was "just like water." Despite these risks, KUMAR committed to sourcing fifty units (100 mg vial) of counterfeit Keytruda for the agents over the next few days, while he remained in the U.S., as a start to their business relationship. Further, according to information provided by KUMAR and his co-conspirator, KUMAR's company was presently

capable of sending 100 units of Keytruda (100 mg vial) a month, or weekly batches of up to 20 units. During a discussion of the logistics for selling hundreds of units of Keytruda into the U.S., KUMAR detailed how his company was able to avoid possible issues with U.S. and Indian customs.

KUMAR was arrested at the conclusion of the meeting by HSI Agents.

### Breach of Plea Agreement

15. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution.

### Restitution, Forfeiture, and Fines – Generally

16. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

17. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea

agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and any other information, that the Government requests. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

18. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States, by executing any releases, waivers, or other documents provided by the Government

19. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

20. Defendant agrees to pay restitution to Merck. Pursuant to 18 § U.S.C. 2323(c), the Court shall order a Defendant convicted of an offense under 18 § U.S.C. 2320 to pay restitution to any victim of the offense as an offense against property as referred to in 18 U.S.C. 3663A(c)(1)(A)(ii). Defendant agrees to entry of an Order requiring payment of full restitution to the victim(s), regardless of the count(s) of conviction. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or

delay payment. Subject to the provisions of paragraph 8 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

### Forfeiture

21. Defendant stipulates and agrees that the property listed in the Indictment's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, section 853(p), exists.

22. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

23. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

24. Subject to the provisions of paragraph 8 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

### Fines

25. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the Government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the

Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 8 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

26. This written plea agreement, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

27. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___Oct. 30th___, 2025.

**SANJAY KUMAR**

_____

Subscribed and sworn to before me on ___October 30___, 2025.

NATHAN OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: ___Melissa Morg_____
Deputy United States District Clerk

17

APPROVED:

FOR THE DEFENDANT

_____
KENT SCHAFFER
ATTORNEY FOR THE DEFENDANT

_____
JAMES KENNEDY
ATTORNEY FOR THE DEFENDANT


FOR THE UNITED STATES:

NICHOLAS J. GANJEI
United States Attorney

JAY HILEMAN
BY: _____
Assistant United States Attorney
Southern District of Texas

ETHAN CANTOR
_____
Trial Attorney
Criminal Division
U.S. Department of Justice

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| UNITED STATES OF AMERICA | § |  |
|---|---|---|
|  | § |  |
| vs. | § | Criminal No. 4:24-cr-00385 |
|  | § |  |
| SANJAY KUMAR | § |  |
|  | § |  |
| Defendant. | § |  |

## PLEA AGREEMENT – ADDENDUM

I have fully explained to Defendant his rights with respect to the pending indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory, and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____     10-30-25
Attorney for Defendant                               Date

_____     _____
Attorney for Defendant                               Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____     Oct. 30, 2025
SANJAY KUMAR                                        Date

19